**James M. LOWRY, Appellant,**

v.

**Carl E. CRIMMINS, Appellee.**

**No. 11–83–242–CV.**

Court of Appeals of Texas, Eastland.

Feb. 9, 1984.

Rehearing Denied March 1, 1984.

**231**

James M. Lowry, Stephenville, for appellant.

Thomas J. Williams, Robert D. Frye, Bishop, Payne, Lamsens & Brown, Fort Worth, for appellee.

DICKENSON, Justice.

Carl E. Crimmins sued James M. Lowry for the balance due on a promissory note. Lowry denied liability, arguing that the note was a partnership debt[1] and that he was discharged from liability under the terms of Section 36(2) of the Uniform Partnership Act[2] and also by Section 3.606 of the Business and Commerce Code.[3] Fol-

---

1. The note is dated September 24, 1977, shows an original principal sum of $11,000, provides for interest at the rate of 10% per annum, asserts a security interest in furniture, library and office machines, and requires payments of $233.72 or more each month. The note was signed:

    "McNiel & Lowry (typewritten name)
    By James M. Lowry (signed name)
    By Donald F. McNiel, II (signed name)"

2. The Texas Uniform Partnership Act, TEX. REV.CIV.STAT.ANN. art. 6132b (Vernon 1970) states in section 36(2):

    A partner is discharged from any existing liability upon dissolution of the partnership by an agreement to that effect between himself, the partnership creditor and the person or partnership continuing the business; and such agreement may be inferred from the course of dealing between the creditor having knowledge of the dissolution and the person or partnership continuing the business.

3. TEX.BUS. & COM.CODE ANN. sec. 3.606(a)(2) (Vernon 1968) provides:

    (a) *The holder discharges any party to the instrument to the extent that without such*

lowing a nonjury trial, the district court rendered judgment for Crimmins in the sum of $6,732.86 for the unpaid balance and pre-judgment interest plus $1,009.93 for attorney fees. Lowry appeals. We reverse and remand.

The trial court made findings of fact which include these findings:

13. At no time with regard to the dissolution of the partnership of McNiel and Lowry was there any agreement between McNiel and Lowry whereby Lowry was discharged from any partnership debts in general, and specifically with regard to the debt to CARL CRIMMINS, on the note in question.

14. Plaintiff, CARL E. CRIMMINS, never consented to the discharge of Defendant, JAMES M. LOWRY, from his liability on the note.

18. Plaintiff, CARL E. CRIMMINS, perfected his security interest on August 26, 1980, by filing a financing statement with the County Clerk of Erath County regarding the furniture, equipment and library materials in which he had a security interest as evidenced by the note.

The findings of fact which have not been challenged by points of error are binding on this court.[4] *City of Fort Worth v. Bewley*, 612 S.W.2d 257 at 259 (Tex.Civ. App.—Eastland 1981, writ ref'd n.r.e.). Appellant has properly challenged findings of fact 14 and 18, arguing that each of them is against the great weight and preponderance of the evidence. These points invoke this Court's jurisdiction under TEX. CONST. art. V, sec. 6 to review the factual sufficiency of the evidence under the rule stated by *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 at 661 (1951), which requires us:

[T]o consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if ... the verdict is so against the

great weight and preponderance of the evidence as to be manifestly unjust.

This test is applicable to a nonjury trial where findings are challenged as being against the great weight and preponderance of the evidence. *Jackson v. McKenney*, 602 S.W.2d 124 at 126 (Tex.Civ.App.— Eastland 1980, writ ref'd n.r.e.); 4 Mc-DONALD, TEXAS CIVIL PRACTICE sec. 16.05 (Rev.1971).

The record is clear that Crimmins and Don McNiel were good friends and that the note in question was a "friendship note." McNiel arranged to borrow the money on September 24, 1977, in order to expand and remodel his law offices after Lowry joined him in the practice of law. Lowry practiced with McNiel for a few months and then McNiel decided that the partnership "had to be dissolved if we were going to keep our head above water." McNiel was having some personal financial problems, and at McNiel's request Crimmins did not perfect his security interest in 1977. Crimmins did not attempt to perfect his security interest until August 26, 1980. Lowry contributed no capital to the law firm, and he took no firm assets with him when the firm was dissolved by McNiel, except for one pending file which McNiel permitted Lowry to take. There was no written partnership agreement, and there was no written dissolution agreement. McNiel testified that they entered into their partnership "on a handshake, and we walked out of it on a handshake." McNiel testified that he assumed the firm's debts when he continued as a solo practitioner after telling Lowry that he "couldn't afford him, we were going down the tubes."

McNiel discussed the dissolution of his law firm with Crimmins before he informed Lowry of his decision. While Crimmins did not receive a formal written notice of the firm's dissolution, the record is clear that he had actual notice of the dissolution. McNiel testified that "when we dissolved,

---

*party's consent the holder ... (2) unjustifiably impairs any collateral for the instrument* given by or on behalf of the party or any person against whom he has a right of recourse. (Emphasis added)

4. Unchallenged finding 13 is fatal to appellant's defense under Section 36(2) of the Texas Uniform Partnership Act, supra note 2.

as far as I was concerned we were back to square one as far as Crimmins and I were concerned." All of the payments on the partnership note after the dissolution were made by McNiel individually. No payments of any kind were ever made by Lowry.

The real problem developed in August of 1980 when McNiel was charged with a felony. He was subsequently sentenced for misapplication of funds and sent to the penitentiary. He surrendered his law license and filed for bankruptcy.

 The bankruptcy court held that Crimmins failed to perfect his lien as to McNiel's assets. We agree with that Court that the evidence shows conclusively that the lien on the assets securing the partnership note was not timely perfected. Crimmins is in no position to collaterally attack the bankruptcy court's ruling that his lien was lost because of his delay in filing the security agreement. Crimmins was a party to those bankruptcy proceedings, and that ruling is binding upon him. Section 3.606(a)(2), supra note 3, clearly provides that "any party to the instrument" is discharged to the extent the holder unjustifiably impairs the collateral. We disagree with the statements made in *Pan American Bank of Brownsville v. Nowland*, 650 S.W.2d 879 at 887 (Tex.App.—San Antonio 1983, no writ), and *Hooper v. Ryan*, 581 S.W.2d 237 at 238 (Tex.Civ.App.—Waco 1979, no writ), that Section 3.606 applies only to sureties and not to co-makers of the instrument.[5] The assets which should have secured the dissolved partnership's note were sold for sums in excess of the balance due on the note.

 It would be manifestly unjust to require the withdrawing partner to pay the balance of the partnership note when the note holder failed to timely perfect his lien and permitted the security for this note to be lost. While the trial court's finding of fact 14 is supported by factually sufficient evidence,[6] we sustain the second point of error, holding that the trial court's finding of fact 18 is so against the great weight and preponderance of the evidence as to be manifestly unjust.

The judgment of the trial court is reversed, and the cause is remanded.

---

**5.** We agree with *Bishop v. United Missouri Bank of Carthage*, 647 S.W.2d 625 at 629 (Mo.App. 1983), and *Rushton v. U.M. & M. Credit Corporation*, 245 Ark. 703, 434 S.W.2d 81 at 83 (1968) that "any party to the instrument," as used in Section 3.606, supra note 3, includes all makers and co-makers of the instrument. See and compare the cases discussed at 93 A.L.R.3d 1283.

Courts must be willing to take statutes as they have been written by the legislature, enforcing them as written, "not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction." See *Kemp v. Fidelity & Casualty Company of New York*, 504 S.W.2d 633 at 637 (Tex.Civ.App.—Eastland 1973), *writ ref'd n.r.e. per curiam*, 512 S.W.2d 688 (Tex.1974).

**6.** While Crimmins' first demand upon Lowry was not made until almost 4 years after the dissolution of the partnership, Crimmins testified that he never consented to the discharge of Lowry's liability on the note.