Carl E. CRIMMINS, Petitioner

v.

James M. LOWRY, Respondent.

No. C–2913.

Supreme Court of Texas.

May 29, 1985.

Rehearing Denied July 10, 1985.

Bishop, Payne, Lamsens and Brown, Thomas J. Williams and Robert D. Frye, Fort Worth, for petitioner.

James M. Lowry, pro se.

CAMPBELL, Justice.

Carl E. Crimmins sued James M. Lowry to recover the unpaid principal and interest due on a promissory note. Lowry contends he is discharged because Crimmins unjustifiably impaired the collateral given for the note. Following a nonjury trial, the trial court rendered judgment for Crimmins. Lowry appealed, and the court of appeals reversed the trial court judgment and remanded the cause to the trial court for a new trial. 665 S.W.2d 230 (1984). We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

In April 1977, Lowry joined Donald F. McNiel as McNiel's law partner in Stephenville, Texas. On September 24, McNiel and Lowry executed a promissory note payable to Crimmins for eleven thousand dollars at ten percent interest. The note was signed: "McNiel and Lowry (typewritten name) By James M. Lowry (signed name) By Donald F. McNiel, II (signed name)." McNiel and Lowry signed a security agreement and a financing statement giving Crimmins a security interest in the furniture, library and office machines of the partnership.

McNiel and Crimmins were good friends. McNiel had incurred substantial debts, and asked Crimmins not to file the financing statement. Lowry neither knew of, nor consented to, this agreement.

On March 18, 1978, McNiel and Lowry orally dissolved the partnership. Neither McNiel nor Lowry made any agreement with Crimmins on payment of the debt.

Crimmins filed the financing statement on August 26, 1980. McNiel continued to make payments on the note until September 18. McNiel filed a petition in bankruptcy shortly afterwards. The bankruptcy court declared Crimmins' security interest a void preferential transfer because he had not filed the financing statement more than ninety days before McNiel filed for bankruptcy.

Our question is whether a comaker on a promissory note may claim the defense of impairment of collateral. The court of appeals in this case held the defense applicable. However, two courts of appeals have held the defense does not apply to a comaker. *Pan American Bank v. Nowland*, 650 S.W.2d 879 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Hooper v. Ryan*, 581 S.W.2d 237 (Tex.Civ.App.—Waco 1979, no writ).

A split of authority exists in other jurisdictions on this question. Cases holding that a comaker is not discharged include: *Commerce Union Board v. May*, 503 S.W.2d 112 (Tenn.1973); *Wohlhuter v. St. Charles Lumber & Fuel Co.*, 62 Ill.2d 16, 338 N.E.2d 179 (1975); *Peoples Bank of Point Pleasant v. Pied Piper Retreat, Inc.*, 158 W.Va. 170, 209 S.E.2d 573 (1974); *Smiley v. Wheeler*, 602 P.2d 209 (Okl.1979); *Oregon Bank v. Baardson*, 256 Or. 454, 473 P.2d 1015 (1970). Cases holding that a comaker is discharged include: *Beneficial Fin. Co. v. Husner*, 82 Misc.2d 550, 369 N.Y.2d 975 (1975); *Rushton v. U.M. & M. Credit Corp.*, 245 Ark. 703, 434 S.W.2d 81 (1968); *Southwest Florida Prod. Credit Ass'n v. Schirow*, 388 So.2d 338 (Fla. 4 DCA 1980).

The TEXAS BUSINESS & COMMERCE CODE provides:

(a) The holder discharges *any party* to the instrument to the extent that without such party's consent the holder ... (2) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse. (emphasis added).

TEX.BUS. & COM.CODE ANN. § 3.606(a)(2) (Vernon 1968).

■■■ The question is whether the words "any party" should be construed to include comakers. Lowry argues that the term "any party" means any party including comakers. The plain meaning of the phrase "any party" is broad enough to include comakers. A fundamental rule controlling the construction of a statute is to determine, if possible, the intent of the legislature as expressed in the language of that statute. However, legislative intent is the law itself, and must be enforced if determined although it may not be consistent with the strict letter of the statute. *State v. Dyer*, 145 Tex. 586, 200 S.W.2d 813 (1947). Because the plain meaning of the statute supports Lowry's construction of the statute, his construction is correct unless the legislative history of the act reveals that the legislature intended not to provide this defense to comakers.

To determine legislative intent this court must examine "the old law, the evil, and the remedy." TEX.REV.CIV.STAT.ANN. art. 10, § 6 (Vernon 1969). The Texas Business and Commerce Code contains the Texas version of the Uniform Commercial Code. Before the Texas Legislature enacted the Business and Commerce Code, the Texas version of the Uniform Negotiable Instruments Law, TEX.REV.CIV.STAT. art. 5948 (repealed 1965), was the law of commercial paper.

Section 120 of the Uniform Negotiable Instruments Law listed five acts by a holder that would discharge a party "secondarily liable." Section 192 of the Uniform Negotiable Instruments Law provided:

The person "primarily" liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are secondarily liable.

5 U.L.A. § 192 (1943). The Texas version contained the same provisions as the Uniform Negotiable Instruments Law. TEX. REV.CIV.STAT. art. 5948, §§ 120, 192 (repealed 1965).

The Texas version of the UCC provision on discharge of parties is TEX.BUS. & COM.CODE ANN. § 3.606 (Vernon 1968). Section 3.606 carries forward several of the acts which constituted a discharge under section 120 of the Negotiable Instruments Act. Section 3.606(1)(b), however, had no counterpart in the Negotiable Instruments Act.

The Uniform Commercial Code Comment to section 3.606 explains the substitution of the phrase "any party" for the phrase "primarily liable" as follows:

The words "any party to the instrument" remove any uncertainty arising under the original section. [Section 120 Uniform Negotiable Instruments Law.] The suretyship defenses here provided are not limited to parties who are "secondarily liable," but are available to *any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it, including an accomodation maker or acceptor known to the holder to be so.* (emphasis added).

TEX.BUS. & COM.CODE ANN. § 3.606 comment 1 (Vernon 1968). The Official Comment explains the addition of section 3.606(1)(b) as follows:

Paragraph (b) of subsection (1) is new. The suretyship defense stated has been generally recognized as available to indorsers or accomodation parties.

TEX.BUS. & COM.CODE ANN. § 3.606 comment 5 (Vernon 1968).

The legislative history indicates that the drafters of the UCC intended section 3.606 to apply to all parties "in the position of a surety." According to the Official Comment, a party "in the position of a surety" is a party who has a right of recourse. Thus, the question of whether the drafters

intended a comaker to be entitled to invoke the suretyship defenses depends upon whether a comaker is a party in the position of a surety.

A surety is a party who promises to answer for the debt of another. *Tolbert v. Standard Accident Insurance Co.,* 148 Tex. 235, 223 S.W.2d 617 (1949). Because the surety promises to pay the debt of another, equity confers the right of subrogation. If the surety or party in the position of a surety pays the debt of the principal, the surety is subrogated to all of the rights, remedies, equities, and securities of the creditor. The surety can bring an action on the debt itself against his principal and foreclose on collateral given as security for the note. *Fox v. Kroeger,* 119 Tex. 511, 35 S.W.2d 679 (Tex.1931). The defenses in section 3.606 protect the surety's right to sue on the note and foreclose the collateral. Clark, Suretyship in the Uniform Commercial Code, 46 Tex.L.Rev. 453, 457 (1968). A party has a "right of recourse" if he possesses a right of subrogation. *See* J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code* §§ 13–16 and n. 145 (2d ed. 1980).

A comaker occupies a hybrid status. A comaker is in the position of a surety to the extent that he promises to answer for the portion of the debt that benefited his fellow comaker but is not a surety for the portion of the debt for which he personally benefited.

A comaker, being in the position of a surety, has a potential right of recourse against his fellow comakers. One comaker, if prejudiced by action against him alone, has a right to contribution from the other comakers for the excess of his pro rata share. *Reed v. Buck,* 370 S.W.2d 867 (Tex.1963). Moreover, upon payment or satisfaction, the comaker assumes the rights of a transferee of the note. TEX. BUS. & COM.CODE § 3.603(b) (Vernon 1968). As a constructive transferee of the note, the comaker is subrogated to the rights of the creditor and may sue on the instrument and foreclose the collateral to the extent of his right of contribution. TEX.BUS. & COM.CODE ANN. § 3.201(a) & (b) (Vernon 1968). We hold this right of subrogation is a "right of recourse" that entitles a comaker to claim the suretyship defenses in section 3.606.

Having determined that section 3.606 applies to comakers, we must now determine the extent to which a comaker is discharged. The Official Comment indicates that the drafters intended section 3.606 to protect a surety's right of recourse. A comaker has only a partial right of recourse. The legislature could not have intended to completely discharge a party with only a partial right of recourse. We hold that the drafters of the Uniform Commercial Code intended section 3.606 to discharge a comaker only to the extent of his right of recourse against his fellow comaker. *See* J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 13–14, n. 125 (2d ed. 1980). The opinion in *Pan American Bank v. Nowland,* 650 S.W.2d 879 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.) and *Hooper v. Ryan,* 581 S.W.2d 237 (Tex. Civ.App.—Waco 1979, no writ) are disapproved to the extent that they conflict with this opinion.

We must now determine the extent to which Lowry is discharged. When the note was executed, McNiel and Lowry were partners and shared the loan proceeds equally. TEX.REV.CIV.STAT.ANN. art. 6132b § 18(1)(b) (Vernon 1970). Lowry, therefore, had a right of recourse against McNiel for one-half of the debt. Here, Lowry lost his right of recourse because of McNiel's discharge in bankruptcy.

The note was for $11,000 and only $5,685 principal was paid; less than one-half of the note was unpaid. Lowry is discharged for that part of the debt for which he was a surety. The defenses in section 3.606 are affirmative defenses. Lowry had the burden to prove what part of the remaining debt represents his surety liability. There is no evidence of the amount paid by the partnership for which Lowry should be

credited. Therefore, the trial court did not err in awarding Crimmins judgment for the unpaid balance of the note.

The judgment of the court of appeals is reversed and the judgment of the trial court is affirmed.

RAY, J., joined by SPEARS and KILGARLIN, JJ., concur.

RAY, Justice, concurring.

I concur with the result reached by the court in this cause. In fact, I agree with the rule announced in the court's opinion on how Tex.Bus. & Comm.Code § 3.606(a)(2) (Vernon 1968) applies to comakers. However, I find it unfortunate that this cause must be decided on this basis.

Upon the oral presentation of this cause, Lowry raised for the first time the argument that Tex.Bus. & Comm.Code § 3.415 (Vernon 1968) allows a party who appears to be a co-maker to demonstrate that he is actually an accomodation party. Indeed, section 3.415(c) provides:

> As against a holder in due course and without notice of the accomodation oral proof of the accomodation is not admissible to give the accomodation party the benefit of discharges dependent on his character as such. *In other cases the accomodation character may be shown by oral proof* (emphasis added).

Since Crimmins did not negotiate the note, he is not a holder in due course. Tex. & Bus.Comm.Code § 3.302 (Vernon 1968). Thus, section 3.415(c) provides Lowry with a mechanism to prove that he is not a co-maker, but only an accomodation party to the note. If he is an accomodation party, then Lowry will be entitled to the full discharge made available by the impairment of collateral defense in section 3.606(a)(2).

In determining whether a party is a co-maker or an accomodation party, the threshold question is: did the party receive a direct benefit from the execution of the instrument? *See Dalton v. George B. Hatley Co.*, 634 S.W.2d 374, 378 (Tex.App.—

Austin 1982, no writ); 2 R. Anderson, UNIFORM COMMERCIAL CODE § 3.415:9 (2d ed. 1971). If a party does not retain any benefit from the note's execution, then that party is likely to be regarded as an accomodation party. *Id.* At oral argument, Lowry pointed out that upon the dissolution of the partnership, he did not keep any of the office equipment that secured the note. Also, Lowry called attention to the fact that he did not receive any of the proceeds of the sale of this equipment at the liquidation of McNeil's bankruptcy. Thus, Lowry now makes a good argument that he is only an accomodation party to the note.

The problem is that Lowry bears the burden of proving his status as an accomodation party. *See Caldwell v. Stevenson*, 567 S.W.2d 278, 280 (Tex.Civ.App.—Austin 1978, no writ); 4 W. Hawkland & L. Lawrence, U.C.C. SERIES § 3.415:03 (1984). At trial, however, Lowry did not request any findings of fact on this matter. Also, he did not present this argument before the court of appeals. Thus, he is precluded from raising this argument at this stage in the litigation. Consequently, I concur with the result reached by the court.

SPEARS and KILGARLIN, JJ., join in this concurring opinion.